| | | |
|---|---|---|
| VINCENT VARELA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 6818 |
| v. | ) | |
| | ) | Judge Rubén Castillo |
| LAKE COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Vincent Varela ("Plaintiff") brings this action against Lake County Correctional Officer Kontagiannis ("Kontagiannis"), Lake County Correctional Officer Rivera ("Rivera"), Lake County, Illinois ("Lake County"), and Lake County Jail Nurse "Nicole," whose last name is unknown ("Nicole"), alleging deprivation of Plaintiff's constitutional rights in violation of 42 U.S.C. § 1983 and a claim for intentional infliction of emotional distress. (R. 17, Am. Compl.) Kontagiannis, Rivera, and Lake County (collectively "Defendants") move to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 18, Defs.' Mot.) For the reasons stated below, the Defendants' motion is granted in part and denied in part.

## BACKGROUND

On January 27, 2017, Plaintiff was incarcerated as a pretrial detainee in the Lake County Department of Corrections Facility ("LCJ"). (R. 17, Am. Compl. ¶ 7.) Prior to his arrival at LCJ, Plaintiff suffered from severe asthma, a condition which causes him to periodically experience severe difficulty breathing. (*Id.* ¶ 6.) Plaintiff has been prescribed a rescue inhaler since around 2012, which he uses to facilitate his breathing. (*Id.*) When Plaintiff was processed into LCJ, he received a medical intake screening and examination. (*Id.* ¶ 7.) During the screening, Plaintiff

advised an LCJ medical care provider of his asthma and need for a rescue inhaler. (*Id.* ¶ 8.) Plaintiff's condition was confirmed by examination and his previous LCJ medical records. (*Id.*) After the screening, Plaintiff was told that an inhaler would be made available to him each morning between 7:00-8:00 a.m., and each evening between 7:00-8:00 p.m., but that Plaintiff was not permitted to retain the inhaler. (*Id.* ¶ 9.) Plaintiff was also informed that if an emergency arose, he could request the inhaler at other times. (*Id.* ¶ 10.)

On the night of March 2, 2017, Plaintiff experienced persistent difficulty breathing. (*Id.* ¶ 13.) He alleges that he informed Kontagiannis about his medical condition and requested access to the rescue inhaler. (*Id.*) He alleges that Kontagiannis told Plaintiff that he was faking and refused to provide an inhaler or notify an LCJ medical care provider. (*Id.*)

That same evening, Nicole visited Plaintiff and listened to his breathing. (*Id.* ¶ 14.) Plaintiff alleges that Nicole also accused Plaintiff of faking and refused to consult a doctor or provide an inhaler. (*Id.*) Plaintiff alleges that Nicole instructed that Plaintiff be put on lock down for malingering (*Id.* ¶ 15), and that Kontagiannis wrote a ticket charging Plaintiff with malingering. (*Id.* ¶ 16.) Plaintiff remained in his cell on lock down during the night where he continued to suffer severe difficulty in breathing. (*Id.* ¶ 17.)

On March 3, 2017, at approximately 7:00 a.m., Plaintiff was taken for a chest x-ray at LCJ which revealed that his lung had collapsed. (*Id.* ¶ 18.) Plaintiff alleges that despite the fact that he complained of great pain and difficulty breathing, Rivera returned him to his cell where he remained for over eight hours. (*Id.* ¶ 19.) At 3:00 p.m., Plaintiff was taken by ambulance to the emergency room at Vista Medical Center where he received an additional chest x-ray which confirmed that his left lung was 85% collapsed. (*Id.* ¶ 20.) Plaintiff was diagnosed with acute respiratory insufficiency secondary to spontaneous pneumothorax, and underwent a painful

procedure to re-inflate his lung. (*Id.* ¶¶ 20-21.) Following the procedure, Plaintiff was admitted into the intensive care unit for four days. (*Id.* ¶ 22.) Plaintiff complains that he continues to suffer from chest pain associated with the procedure, which required an incision on the left side of his chest. (*Id.* ¶ 23.)

## PROCEDURAL HISTORY

Plaintiff filed his original complaint on October 10, 2018, asserting three claims: Count I sought recovery against Kontagiannis, Rivera, and Nicole under 42 U.S.C. § 1983 for deliberate indifference to Plaintiff's medical condition; Count II sought recovery against Lake County under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978); and Count III sought recovery against Kontagiannis, Rivera, Nicole, and Lake County under state law for intentional infliction of emotional distress. (R. 1, Compl.) On December 10, 2018, Defendants moved to dismiss all claims against them. (R. 10, Defs.' Mot.)

On February 28, 2019, Plaintiff filed an amended complaint, which removed the *Monell* claim and altered some factual allegations. (R. 17, Am. Compl.) On March 13, 2019, Defendants moved to dismiss Plaintiff's amended complaint. (R. 18, Defs.' Mot.) Defendants assert that Plaintiff's Section 1983 claim must be dismissed because they were entitled to reasonably rely on the judgment of medical staff at LCJ concerning Plaintiff's treatment. (*Id.* at 2.) As to Rivera, Defendants further argue that Plaintiff has failed to allege specific conduct showing that Rivera was personally responsible for a constitutional violation. (*Id.*) Additionally, Defendants argue Plaintiff's intentional infliction of emotional distress claim must be dismissed since it was filed beyond the one-year limitations period of 745 ILL. COMP. STAT. § 10/8-101(a). (*Id.* at 2-3.)

In response, Plaintiff maintains that the facts pleaded in the amended complaint support a Section 1983 claim. (R. 21, Pl.'s Resp. at 2.) Plaintiff concedes that his intentional infliction of

emotional distress claim is untimely. (*Id.* at 2, n.1.) In reply, Defendants maintain that Plaintiff has failed to allege any facts which support a cause of action under Section 1983 against either Kontagiannis or Rivera. (R. 22, Defs.' Reply at 5.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[T]o rise above the speculative level of plausibility, the complaint must make more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (internal quotations omitted). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018).

## ANALYSIS

### I.     Section 1983 Claim (Count I)

Defendants move to dismiss Plaintiff's Section 1983 claim on the basis that they were entitled to reasonably rely on the judgment of medical staff at LCJ concerning Plaintiff's treatment. (R. 18, Defs.' Mot. at 1.) In addition, Defendants argue that Plaintiff has pleaded no specific conduct to plausibly allege that Rivera was personally responsible for a constitutional

violation. (*Id.* at 2.) Plaintiff contends that Defendants' failure to treat Plaintiff's serious medical condition was objectively unreasonable in violation of Section 1983. (R. 21, Pl.'s Resp. at 1.) According to Plaintiff, Defendants' argument that Kontagiannis and Rivera were entitled to reasonably rely on the judgment of LCJ medical staff does not apply to circumstances where jail officers have reason to know that their medical staff are failing to treat a seriously ill inmate who exhibits prolonged difficulty in breathing. (*Id.* at 2.) As to Rivera, Plaintiff argues that her conduct in returning him to his cell after he received his chest x-ray, despite Plaintiff's complaints of difficulty breathing and great pain, was objectively unreasonable. (*Id.* at 8-9.)

For a defendant to be liable under Section 1983, the plaintiff's medical condition must be "objectively, sufficiently serious." *Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). A serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. The Seventh Circuit Court of Appeals recently decided in *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018), that a standard of objective reasonableness, instead of deliberate indifference, governs claims under the Fourteenth Amendment's due process clause for inadequate medical care provided to pretrial detainees. *See also McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). The controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps. *Miranda*, 900 F.3d at 353. The first step "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [the plaintiff's] case." *Id.* A showing of mere negligence or even gross negligence will not suffice. *Id.* The second step asks whether the challenged conduct was objectively reasonable. *Miranda*, 900 F.3d at 354. To sufficiently

state a claim then, Plaintiff must allege that (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly" when he considered the consequences of his handling of the plaintiff's case, and that (2) the defendant's conduct was objectively unreasonable. *Bell v. Sheriff of Cook Cty.*, No. 17 C 06324, 2018 WL 6100033, at \*4 (N.D. Ill. Nov. 21, 2018).

Defendants principally rely on *McCann*, a case decided at summary judgment, to support their contention that their conduct was not objectively unreasonable. (R. 18, Defs.' Mot. at 7-8.) In *McCann*, the plaintiff died from an over-prescription of methadone that was administered by a jail nurse who followed a doctor's orders. *McCann*, 909 F.3d at 885. The court reasoned that the nurse was able to rely on the doctor to determine the proper dosage of methadone needed to treat the plaintiff's burn wounds since there was no evidence that the nurse's actions were objectively unreasonable and "nothing about [the doctor's] prescriptions or course of care more generally raised any obvious risks of harm for [the plaintiff]." *Id.* at 887. The court held that the nurse's conduct was not objectively unreasonable because she had acted in strict compliance with the doctor's orders, and there was no evidence that she acted recklessly or intentionally. *Id.* at 886-87.

Unlike *McCann*, however, Plaintiff alleges here that Kontagiannis and Rivera did not act in compliance with medical orders, and ignored Plaintiff's persistent complaints and obvious signs of his serious medical condition. (R. 17, Am. Compl. ¶¶ 10-19.) Specifically, Plaintiff alleges that LCJ medical staff authorized him to request an inhaler from a guard during an emergency, and that despite his obvious signs of difficulty breathing, Kontagiannis denied his request, responded that he was faking, and wrote him up for malingering. (*Id.* ¶¶ 10, 13, 16.) Plaintiff also alleges that after receiving his chest x-ray results, an LCJ medical attendant told him that he should go to the emergency room right away to treat his collapsed lung. (*Id.* ¶ 18.)

However, Plaintiff claims that despite this instruction and his obvious signs of difficulty breathing, Rivera returned him to his cell where he remained for over eight hours. (*Id.* ¶ 19.) These allegations plausibly give rise to an inference that Kontagiannis and Rivera's conduct in ignoring his complaints, denying him access to his inhaler, and for Rivera, returning him to his cell, was objectively unreasonable and that their inaction was premised on a purposeful, knowing, or reckless disregard of the consequences. *Miranda*, 900 F.3d at 352; *Bell*, 2018 WL 6100033, at *4 (denying motion to dismiss where plaintiff alleged defendant failed to act in response to signs of serious breathing problem).

The Court is likewise unpersuaded by Defendants' argument that Plaintiff fails to state a claim against Rivera based on her single act of transporting Plaintiff back to his cell. (R. 18, Defs.' Mot. at 6.) Defendants rely on *Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008) to support their contention that Plaintiff has failed to allege any facts that Rivera caused or participated in an alleged constitutional violation. (R. 18, Defs.' Mot. at 5-6.) In *Grieveson*, the plaintiff failed to inform jail officers he was in danger and only provided vague information about his condition. *Grieveson*, 538 F.3d at 775-78. The court held that "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct, does not raise a genuine issue of material fact with respect to those defendants." *Grieveson*, 538 F.3d at 778.

Unlike *Grieveson*, however, here Plaintiff alleges that he exhibited pain and complained of difficulty breathing to Rivera. (R. 17, Am. Compl. ¶ 19.) Plaintiff's complaint plausibly alleges that Rivera had knowledge of his serious medical condition and that she nevertheless returned him to his cell despite his obvious signs of distress. (*Id.*) Accordingly, Plaintiff alleges personal involvement sufficient to state a claim for relief against her. *See Mitchell v. Kallas*, 895

F.3d 492, 498 (7th Cir. 2018) ("The personal-involvement requirement is satisfied if the constitutional violation occurs at a defendant's direction or with her knowledge or consent."); *Ojeda v. Kramer*, No. 15 CV 7309, 2017 WL 1250834, at *3 (N.D. Ill. Apr. 5, 2017) (denying motion to dismiss where plaintiff alleged defendants ignored his requests for medical care and his obvious signs of a serious medical condition, including jaundice, vomiting, abdominal pain, severe discoloration of his urine, and mucus in his stool.)

Defendants also assert that Plaintiff has failed to allege any facts to show that Kontagiannis caused or participated in an alleged constitutional violation. (R. 18, Defs.' Mot. at 6.) According to Defendants, Plaintiff's own allegations demonstrate that Kontagiannis summoned medical staff after Plaintiff complained to her since he was later seen and treated by the jail medical staff on the evening of March 2, 2017, and the morning of March 3, 2017. (*Id.*) Contrary to Defendants' argument, however, Plaintiff alleges that Kontagiannis ignored his obvious signs of distress and refused to call for medical help, and that Nicole also visited him at some point during the night of March 2, 2017, but not that Kontagiannis had summoned her. (R. 17, Am. Compl. ¶¶ 13, 14.) While discovery might ultimately establish the chain of events that Defendants suggest, Plaintiff's complaint does not necessarily plead it. (*Id.*)

For all these reasons, Defendants' motion to dismiss Plaintiff's Section 1983 claim is denied.

## II.     Intentional Infliction of Emotional Distress Claim (Count II)

Defendants argue that Plaintiff's state law claim for intentional infliction of emotional distress must be dismissed since it was filed beyond the expiration of the one-year statute of limitations set forth in 745 ILL. COMP. STAT. § 10/8-101(a). (R. 18, Defs.' Mot. at 2-3.) In response, Plaintiff concedes the untimeliness of his claim. (R. 21, Pl.'s Resp. at 2, n.1.) Defendants' motion to dismiss the claim is therefore granted as unopposed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (R. 18, Defs.' Mot.) is DENIED as to Plaintiff's Section 1983 claim (Count I), and GRANTED as to Plaintiff's intentional infliction of emotional distress claim (Count II). A status hearing is set for August 6, 2019, at 9:45 a.m. The parties are DIRECTED to exhaust all settlement possibilities prior to the status hearing.

ENTERED:

**Judge Rubén Castillo**
**United States District Court**

**Dated: July 16, 2019**